We'll hear argument next in Presumey v. Board of Education, Town of Greenwich, 18-1842. Good morning, may it please the court. I'm attorney Andrew McPherson for the Town of Greenwich Board of Education. This court in Stevens v. Rite Aid stated that courts should give considerable deference to the determination of employers regarding what essential functions of a job are. Now, the plaintiff was a paraprofessional, also known as professional assistant for the Board of Ed. Essential functions of the job were lifting and toileting students with special needs. Now, prior to the plaintiff's employment beginning with the Board of Ed, the Board of Ed and the union who represents the professional assistants were negotiating a new collective bargaining agreement. Both sides to that negotiations came into those negotiations wanting to make sure that lifting and toileting students with special needs were essential functions of the job. Can I skip you ahead just a little bit? I think the key to the case is probably wasn't there evidence before the jury that showed that notwithstanding the consolidation of the positions, there were still waivers granted. I'm not saying there was great evidence, but there was some evidence that some people didn't have to do that all the time. And if not them, then why plaintiff? Well, Your Honor, there was evidence. It was self-serving testimony by the plaintiff that she was previously- The other is going to be self-serving in one sense. So the fact that you describe it or characterize it as self-serving doesn't help. The answer that you started with was there was evidence, correct? There was. It was testimony by the plaintiff. So why isn't that enough? That's not enough because, Your Honor, the evidence was controverted. And the only evidence that she- Of course, it's a trial. Right, right. The problem that I have, and I suspect we all share it to some degree or other, is we had something fairly dramatic happen at the trial that we didn't see, but the jury did, where, you know, the self-serving testimony, as you put it, by both sides, on the plaintiff's side, there's some evidence that there are acceptance waivers granted. On the other side, there's testimony, no, we never do that. And then a woman gets on the stand who says, I'm capable of doing the job. I didn't get any waiver. And apparently, at least the plaintiff's position was, that it was evident to the jury that she was not able to do these things. And I guess I credit at least the good faith of that argument to the extent that they then went after the official from the Board of Education who testifies next, says, you saw that woman, right? She's not capable of doing this. And the witness insisted that she was. And then they went and summed up to the jury on that. Now, every case I've ever tried as a lawyer or as a trial judge, something that happens in the courtroom that the jury sees, that the jury thinks discredits a witness, is way more powerful than something in a document or some prior inconsistent statement or anything else that happens outside the jury's presence. So what are we to do with something like that? Are we to say, well, we don't think that matters, or we who didn't see it don't think it was as dramatic as the plaintiff would like to portray it? How do we deal with that? Well, Your Honor, the only evidence of it was the purported, as described by plaintiff's counsel, walking of Ms. Daly. I was present for the trial. I didn't notice a limp. I didn't notice anything wrong with the way Ms. Daly moved in any way, Your Honor. I was unaware of why she was even going to be called until the summation. And at summation, I realized the argument was to try to parade her in front of the jury to hope that the jury finds something in her. Now, plaintiff testified that Ms. Daly was totally paralyzed on the left side. Ms. Daly testified that she has a foot drop. There was no evidence whatsoever as to whether that's a medical determination. The Board of Ed has never received any documentation from a doctor or anyone else saying that she's been diagnosed with that. We don't know what the symptoms are, whether that happens once a week, once a month, once a year, once a decade. Whether that affects her job in any way, there's no evidence whatsoever, Your Honor. Ms. Daly herself is the only one who testified as to she said that I can lift students with special needs from the wheelchair to the toilet. And the whole purpose of this is so students don't have to soil themselves in classrooms. The purpose of this is to protect the students. Now- Let me ask you a question. Just to, I guess, go back to Judge Kogan's question, but it echoes Judge Lynch's question. If we, just we, reading this record were to credit the testimony of Ms. Prasumi and Ms. Tileman, Ms. Tileman, and also credit the possibility that the jury was persuaded by what they saw when they saw Ms. Daly walk, how could you prevail? Well, Your Honor, the only request by Ms. Daly was for light duty. There's no evidence whatsoever what light duty entails. What reasonable accommodation, light duty, would it be the use of a mechanical device? There's no evidence whatsoever of the cost of what this light duty would be, much less that its cost is not clearly exceeded, or its cost does not clearly exceed its benefits, Your Honor. The question was whether lifting and toileting was an essential function of the job. When the existence of some light duty as an exception to that, how could you prevail if there was light duty? Forget about what the contours of it might be. How could you prevail? Well, you're asking me to assume that lifting and toileting are essential functions of the job? Is that what you're asking me to assume? No, I'm asking you to assume that there is something called light duty which exempts someone from performing lifting and toileting. It may be informal, it may not be written down, but what if the evidence shows it in fact appears to have happened? Well, the First Circuit had a case in Phelps just like that, Your Honors, which is cited in my brief. And it was a nurse, and she had a lifting restriction, much like the plaintiff in this case. And she entered into job-sharing agreements with other nurses, and her supervisor at the time at the hospital okayed it. Now, it didn't go any higher up than her supervisor. The defendants, executives, and HR were unaware of it. May I finish my thought? You may. Were unaware of it. And the First Circuit came down, as other courts have, including the District Court of Connecticut and Palmyra, that permitting someone to have quote-unquote light duty is more akin to a creation of a new position, which this court specifically ruled is not required under the ADA. You don't challenge the jury instructions in this case, do you? No, Your Honor. Thank you. We'll hear from Mr. Williams. Please quote him, John Williams, for Mrs. Prisumi. I tried my first jury case 51 years ago this month, and since then there has never been a month that I haven't had at least one and maybe more than one jury trial. And in all that time— You're fighting against the trend. I am. In all that time, this is the only time I have ever had that kind of a smoking gun moment in a trial that happened in this case. If counsel were correct that nobody in the courtroom saw what in fact was seen, then the jury would have spent no time at all in rejecting my argument, which clearly focused on what they had seen. And they would have held it against Mrs. Prisumi, and if I were here, I wouldn't be here as the appellee, that's for sure. Judge Martinez, in denying the new trial motion, did not say that I had made an argument that these things could be observed by the jury. She said that I pointed out that these things could be seen by the jury, that I underscored, I think was her word, that these things were seen by the jury. We were in a very small courtroom. I'm sure none of the members of this panel has been in that particular courtroom, but it's a very small courtroom. And everyone was cheek by jowl, quite literally, and the witnesses were not sequestered. It was inconceivable that Regina Williams had not seen what she denied having seen. Inconceivable. Not only was this a question of not being able to run after a bolting child, but in fact it was a case of not being able to utilize her left arm at all. While she, Eileen Daly, denied that she was totally incapable of using the left arm, the fact is that in her entire time on the witness stand, she never once so much as moved her left arm, despite many occasions when one ordinarily would have done so, and she was sitting in immediate proximity to the members of the jury. They couldn't fail to see those things. And so that when Mrs. Prisumi testified that in fact this woman was totally paralyzed on her left side, was incapable of not only lifting, was even incapable of so much as pushing a wheelchair, and that she was on not temporary light duty, but permanent light duty, and had been for years, the jury clearly was entitled to find that the practice followed by the Greenwich Board of Education was that some people got a pass and some people, including Mrs. Prisumi, didn't get a pass. That's sufficient to meet the test that was set forth in the right aid case, and clearly the lower court was correct in denying the new trial motion. I respectfully submit that this case should be affirmed. Thank you. Your Honors, the issue of running is a red herring. Running was not one of the two essential functions of the job of professional assistant that was at issue or claimed to be at issue at trial. Running was something that was entered into at trial on behalf of plaintiff's counsel by questioning Ms. Daly's ability to run after a bolting child. Now, there's no evidence a plaintiff was terminated for failing to run. Whether running was an essential function of the job is not a matter at issue in this appeal, and has never been a matter at issue in this case, Your Honors. Now, Ms. Daly clearly testified that she could lift in toilet special needs students, and she stated that the only issue she has with her left arm are fine motor function skills in her fingers, which in no way impacts her ability to lift special needs students. Is the jury allowed to look at her and say, gee, either she's making it up or she doesn't appreciate her disability? The jury is allowed to make their own perceptions and make decisions off of that, Your Honor. But when a plaintiff makes a very wide-ranging assertion that someone is paralyzed on her left side, and the person gets up and walks to the witness stand, the person's not asked to pick up a pencil, much less any kind of heavy object, to see if she can use her left hand, and she states that she can. There's only evidence on the record that she's able to use her left hand. The only evidence, or the only thing on the record regarding her inability to not use her left hand is Ms. Presumi's own testimony, which, by the way, was not only controverted by two HR employees for the town, it was controverted by the head of the union. The head of the union testified. He stated that the union itself did an investigation to determine if any other professional assistant had ever been given, if any professional assistant has ever been given light duty, and they determined no. It's never happened. What do you make of, am I wrong to think that Joyce Tillman testified that Claire Sherry, whoever that was, and Gary Pishker, who testified, were given light duty and that they seemed unable to lift and transport students? She actually did testify, and it's on the record that Ms. Tillman, at the same time as a former employee of the Board of Education, who at time of trial had a lawsuit for discrimination pending against the Board of Education. It did, Your Honor. And so the jury had it all before it? They had it before, and then Mr. Pishker denied her accusations. The union denied the truth of their testimony. Mr. McPherson, I'm very sympathetic to your argument. It sure sounds like if I were a juror, I might have come out the other way. On the other hand, I wasn't a juror. I didn't see the things that the jury saw, and the jury's entitled to make its own mind up, whatever I think, so long as there is evidence. And if you have a direct contradiction between Mr. Pishker's testimony about what he can do and what Ms. Tillman said he, at least at some point, couldn't do, isn't that exactly the role of the jury to decide who's telling the truth? And there can be ten witnesses on one side, and only one or two on the other. It's a question for the jury. Unless we were to say, which I take it no one's even asking us to say here, that we should defer absolutely to the formal job requirements and not pay any attention to what happens in practice, once that door is open to what happens in practice, we have competing accounts here at the trial of what was done in practice, don't we? I agree, and I'm not asking Your Honors to make a judgment that you have to defer 100% to an employer's determination. What I am asking is for Your Honors to consider that just a request for light duty, even if previously given, is not a request for reasonable accommodation. And it does not show that lifting and toileting students are not essential functions of the job, as the District Court in Palmyra discussed somewhat. Thank you very much. Thank you, Your Honors.